# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **HENRY EDWARD JEWELL,** ) | |
| Plaintiff ) | |
| ) | Civil Action No. 1:18cv00029 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| **ANDREW SAUL,**[1] ) | |
| **Commissioner of Social Security,** ) | By: PAMELA MEADE SARGENT |
| Defendant ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Henry Edward Jewell, ("Jewell"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011, West 2012 & Supp. 2019). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019; therefore, he is substituted for Nancy A. Berryhill as the defendant in this case.

particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "'substantial evidence.'"'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Jewell protectively filed his applications for DIB and SSI on November 19, 2012, alleging disability as of December 1, 2011, based on post-traumatic stress disorder, ("PTSD"); short- and long-term memory loss; body aches and pains; high blood pressure; depression; and obsessive compulsive disorder, ("OCD"). (Record, ("R."), at 141, 367-71, 374-75, 412, 416, 443.) The claims were denied initially and upon reconsideration. (R. at 257-59, 263-70.) Jewell then requested a hearing before an administrative law judge, ("ALJ"). (R. at 271-73.) The ALJ held a hearing on June 15, 2016, at which Jewell was represented by counsel.[2] (R. at 162-200.) A vocational expert also was present and testified at Jewell's hearing. (R. at 194-99.)

By decision dated August 2, 2016, the ALJ denied Jewell's claims. (R. at 141-54.) The ALJ found that Jewell met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2014. (R. at 143.) The ALJ found that Jewell had not engaged in substantial gainful activity since December 1, 2011, the alleged onset date.[3] (R. at 143.) The ALJ found that the medical evidence established that Jewell had severe impairments, namely

---

[2] While Jewell was represented by counsel at his hearing, by letter dated April 17, 2017, Jewell's attorney withdrew his representation. (R. at 16.) Therefore, Jewell is before this court pro se.

[3] Therefore, Jewell must show that he was disabled between December 1, 2011, the alleged onset date, and December 31, 2014, his date last insured, in order to be eligible for DIB benefits.

degenerative disc disease; residuals of a left elbow fracture with neuropathy and traumatic arthritis; arthritis of the hips; obesity; depression/major depressive disorder/adjustment disorder; anxiety; and OCD, but she found that Jewell did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 143, 145.) The ALJ found that Jewell had the residual functional capacity to perform light[4] work that did not require him to understand, remember and carry out more than simple job instructions; that required no more than occasional interaction with co-workers and supervisors, including work activity that did not require teamwork or over-the-shoulder supervision; that did not require interaction with the general public; that did not include fast-paced production requirements and should involve, few, if any, work-related decisions; and that did not require more than occasional, simple changes in the work routine.[5] (R. at 148.) The ALJ found that Jewell was unable to perform his past relevant work. (R. at 153.) Based on Jewell's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Jewell could perform, including the light jobs of a sorter, a night cleaner and a price marker, and the sedentary[6] jobs of a folder, a polisher and a food sorter. (R. at 153-54.) Thus, the ALJ concluded that

---

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2019).

[5] It appears that the ALJ mistakenly stated that Jewell could perform medium work; however, her detailed description makes it clear that she intended to limit Jewell to light work. (R. at 148.)

[6] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2019).

Jewell was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 154.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2019).

After the ALJ issued her decision, Jewell pursued his administrative appeals, (R. at 37), but the Appeals Council denied his request for review. (R. at 17-22.) By letter dated June 15, 2017, Jewell requested that the Appeals Council reopen his SSI claim for review, (R. at 7-14), but the Appeals Council denied his request. (R. at 4-5.) Jewell then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2019). This case is before this court on Jewell's motion for summary judgment filed August 26, 2019, and the Commissioner's motion for summary judgment filed September 25, 2019.

## II. Facts & Analysis

Jewell was born in 1967, (R. at 367, 374), which, at the time of the ALJ's decision, classified him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). He has two years of college education and specialized job training as an occupational therapy assistant. (R. at 417.) Jewell has past work experience as a lawncare worker and an occupational therapy assistant. (R. at 195, 418.) Jewell testified that he received mental health treatment and counseling through the U.S. Department of Veterans Affairs, ("VA"), for depression, anxiety and OCD. (R. at 185.) Jewell testified that he had experienced depression since suffering a traumatic brain injury sustained in an automobile accident.[7] (R. at 186.) He stated that his symptoms of depression had increased over the years, but had become extreme after finding his father deceased. (R. at 186.) Jewell stated that his father had committed suicide in December 2011. (R. at 186.) Since that time, Jewell

---

[7] Medical records indicate that Jewell suffered a head injury in 2004. (R. at 1167.)

stated that he had been admitted to a locked unit for depression on three separate occasions. (R. at 185-86.) Jewell stated that he took medication for his symptoms of depression, but his depression persisted. (R. at 187.) He stated that he had side effects from his medication, including lethargy. (R. at 187.) Jewell stated that anxiety caused his heart to race and made him feel jittery. (R. at 187.) He stated that he participated in mental health treatment once, sometimes twice, a week. (R. at 193.)

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2019). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2019).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011, West 2012 & Supp. 2019); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050,

1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Jewell argues that the ALJ erred by improperly determining his residual functional capacity. (Plaintiff's Brief In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-47.) In particular, Jewell argues that a subsequent determination awarding him benefits constitutes new evidence.[8] (Plaintiff's Brief at 8-9.) Jewell also argues that the ALJ failed to consider the number of days he would be absent from work each month due to his need to attend medical appointments. (Plaintiff's Brief at 9.) In addition, Jewell argues that the ALJ erred by rejecting the opinion of his treating psychologist, Haynes, as well as the function reports completed by his mother, Deloris Jewell. (Plaintiff's Brief at 9-13, 29; R. at 453-460, 506-13, 2651-56.) Lastly, Jewell argues that the ALJ erred by failing to consider the combined effect of his impairments in determining that he could perform other work. (Plaintiff's Brief at 30-47.)

In rendering her decision, the ALJ reviewed medical records from Dayna

---

[8] Based on my findings concerning this argument, I will address only the facts relevant to Jewell's mental health.

Haynes, Psy.D., a clinical psychologist; Twin County Physician Practices, ("Twin County"); James H. Quillen VA Medical Center, ("VA"); Louis Perrott, Ph.D., a state agency psychologist; and Alan D. Entin, Ph.D., a state agency psychologist. Jewell also submitted medical records from Haynes, the VA and Twin County, as well as a statement from Jewell's mother to the Appeals Council.[9]

The record shows that Jewell received mental health treatment at the VA from December 2011 through March 2016, following his father's suicide[10] and was diagnosed with OCD; major depressive affective disorder; adjustment disorder; and social anxiety disorder. (R. at 551-62, 880-93, 1371-78, 1660-71, 1758-63, 1777-80, 1789-90, 1797-1813, 1823-30, 1994-95, 2024-26, 2029-32, 2043-46, 2217, 2238-47, 2257-58, 2260-61, 2362-67.) During this time period, Jewell's Global Assessment of Functioning, ("GAF"),[11] score ranged from 20[12] to 55.[13] (R. at 563.)

Jewell was voluntarily admitted for inpatient mental health treatment from

---

[9] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 17-22), this court also must take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

[10] Jewell reported that his father committed suicide on December 1, 2011. (R. at 564.)

[11] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[12] A GAF score of 11-20 indicates that the individual has "[s]ome danger of hurting self or others ...OR occasionally fails to maintain minimal personal hygiene ... OR gross impairment in communication ...." DSM-IV at 32

[13] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

October 9, 2012, through October 17, 2012, for depression with suicidal ideation. (R. at 563-67.) His GAF score was assessed at 35[14] upon admission. (R. at 683.) Jewell expressed suicidal thoughts and guilt for not preventing his father's suicide. (R. at 564.) He also endorsed worsening symptoms of OCD. (R. at 565.) Jewell was diagnosed with major depressive disorder and OCD. (R. at 563.) Upon discharge, Jewell's GAF score was assessed at 51. (R. at 563.)

On June 25, 2013, Louis Perrott, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Jewell had severe affective disorders and anxiety-related disorders. (R. at 205-06.) He found that Jewell had mild restrictions on his activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; and he had experienced one or two repeated episodes of extended-duration decompensation. (R. at 205.)

That same day, Perrott completed a mental assessment, indicating that Jewell had moderate limitations in his ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at

---

[14] A GAF score of 31-40 indicates that the individual has "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood ...." DSM at 32.

209-10.) Perrott stated that Jewell's work-related mental abilities were, otherwise, not significantly limited. (R. at 209-10.)

On April 7, 2014, Alan D. Entin, Ph.D., a state agency psychologist, completed a PRTF, indicating that Jewell had severe affective disorders and anxiety-related disorders. (R. at 233-34.) He found that Jewell had mild restrictions on his activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; and he had experienced one or two repeated episodes of extended-duration decompensation. (R. at 234.)

That same day, Entin completed a mental assessment, indicating that Jewell had moderate limitations in his ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to travel in unfamiliar places or use public transportation. (R. at 237-39.) Entin stated that Jewell's work-related mental abilities were, otherwise, not significantly limited. (R. at 237-39.)

Jewell was voluntarily admitted for inpatient mental health treatment from August 8, 2015, through August 13, 2015, for depression with suicidal ideation. (R. at 1660-71.) Jewell reported ongoing guilt over his father's death. (R. at 1661.)

Jewell reported worsening depression, worsening OCD and auditory and visual hallucinations. (R. at 1661.) His symptoms of depression improved, and he denied thoughts of suicide. (R. at 1661.) Upon discharge, Jewell was diagnosed with major depressive disorder, recurrent, severe, without psychotic features and OCD. (R. at 1668.)

Jewell again sought inpatient treatment from November 4, 2015, through November 9, 2015, after expressing suicidal thoughts. (R. at 1371-78.) Jewell endorsed "off and on suicidal thoughts" since the death of his father in 2011. (R. at 1371.) His medications were changed, and his anxiety improved. (R. at 1371.) Upon discharge, Jewell was diagnosed with severe major depression, without psychotic features; OCD; and akathisia. (R. at 1375.) On March 4, 2016, Jewell reported that his depression "is still pretty strong." (R. at 1759.) He reported that his anxiety had worsened, and he felt restless. (R. at 1759.) Jewell also reported visual and auditory hallucinations. (R. at 1760.) He was diagnosed with severe major depression without psychotic features and OCD. (R. at 1761.)

On June 10, 2016, Dayna Haynes, Psy.D., a clinical psychologist with the VA, saw Jewell for an individual psychotherapy session.[15] (R. at 2680-82.) Haynes noted that, although Jewell's examination was normal, the Beck Depression Inventory – Second Edition, ("BDI-2"), was administered, indicating that Jewell suffered from severe depression. (R. at 2680-81.) She diagnosed major depressive disorder, recurrent, severe, without psychotic features; OCD; and social anxiety disorder, generalized. (R. at 2681.)

That same day, Haynes completed a statement, assessing Jewell's then-

---

[15] Haynes continued to treat Jewell through October 24, 2016. (R. at 57-58, 75-77, 121-25.)

current GAF score at 55, with his highest GAF score being 55 within the past year. (R. at 2651-56.) Haynes opined that Jewell had a satisfactory ability to understand, remember and carry out short, simple instructions; to make simple work-related decisions; and to be aware of normal hazards and take appropriate precautions. (R. at 2653-55.) She found that Jewell had a seriously limited ability to remember locations and work-like procedures; to understand, remember and carry out detailed instructions; to ask simple questions or request assistance; and to accept instructions and respond appropriately to criticism from supervisors. (R. at 2653-54.) Haynes opined that Jewell had no useful ability to maintain attention and concentration for extended periods; to maintain regular attendance and skilled work; to sustain an ordinary routine without special supervision; to deal with stress of semi-skilled and skilled work; to work in coordination with or proximity to others without being unduly distracted; to complete a normal workday without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the public; to get along with co-workers and peers without unduly distracting them or exhibiting behavior extremes; to maintain socially appropriate behavior; to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in a routine work setting; to travel in unfamiliar places; to use public transportation; and to set realistic goals or make plans independently of others. (R. at 2653-55.)

Haynes found that Jewell had extreme limitations on his activities of daily living and in maintaining social functioning, and he had constant deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner and with episodes of deterioration or decompensation in work or work-like settings, which cause the individual to withdrawal from that situation or to experience exacerbation of signs and symptoms. (R. at 2655.) Haynes noted that

these restrictions existed and persisted since she began treating Jewell on December 9, 2014. (R. at 2655.)

I start my analysis with Jewell's argument that a subsequent determination awarding him benefits constitutes new evidence. (Plaintiff's Brief at 8-9.) Jewell asserts that his subsequent award of benefits constitutes new and material evidence warranting a remand of the decision finding him not disabled on August 2, 2016. (Plaintiff's Brief at 8-9.) While Jewell pursued an appeal of the ALJ's decision to the Appeals Council, he protectively filed a new claim for benefits on August 22, 2016,[16] alleging disability as of December 1, 2011, based on various conditions, including depression, anxiety, OCD, affective disorder and agoraphobia. (Attachment to Plaintiff's Brief.) On his subsequent application, Jewell was found to be disabled and entitled to benefits beginning August 22, 2016, 20 days after the ALJ's August 2, 2016, decision denying benefits. (Attachment to Plaintiff's Brief.)

Jewell argues that the finding of disabled on his subsequent application constitutes "new" and "material" evidence that would justify a remand to the Commissioner for further determination under sentence six of 42 U.S.C. § 405(g). In support of the argument, Jewell cites *Hayes v. Astrue,* 488 F. Supp. 2d 560, 565 (W.D. Va. 2007), which relies on the common-sense inference that disability usually does not occur overnight and, consequently, a subsequent finding of disabled just after the initial finding of not disabled may cast doubt on the initial determination. The reasoning of *Hayes,* however, does not withstand closer scrutiny, most importantly because it is unsupported by the statutory test, as

---

[16] The Appeals Council denial, dated April 12, 2017, states that, if Jewell refiled for SSI benefits within 60 days of its decision, then Jewell's protective filing date of August 22, 2016, could be used. (R. at 17-20.) Jewell appealed the decision within 60 days; however, a protective filing date of April 27, 2017, was erroneously used. Per Appeals Council direction, Jewell's protective filing date was amended to August 22, 2016. (Attachment to Plaintiff's Brief.)

persuasively explained in *Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 654 (6th Cir. 2009).

In *Allen,* the Sixth Circuit held that remanding the case simply upon a subsequent finding of disabled is an incorrect application of sentence six,

> If a subsequent favorable decision – separated from any new substantive evidence supporting the decision – could itself be "new evidence" under sentence six, the only way that it might change the outcome of the initial proceeding is by the power of its alternative analysis of the same evidence. But remand under sentence six is not meant to address the "correctness of the administrative determination" made on the evidence already before the initial ALJ. [*Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991).] In addition, it is overly broad to read the words "new evidence" in sentence six to include a subsequent decision based on the same evidence. In *Melkonyan*, the Court noted that the legislative history of § 405(g) shows that "Congress made it unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence' in Social Security cases." [*Melkonyan*, 501 U.S.] at 100. 111. S.Ct. 2157.

*Allen,* 561 F.3d at 653.

Based on this, I do not find it appropriate to remand Jewell's claims simply on the basis that he was awarded benefits on a subsequent application. However, I do find that a sentence six remand is appropriate based on Jewell's subsequent favorable decision being supported by new and material evidence that might change the outcome of the ALJ's August 2, 2016, decision. Sentence six allows a court to remand for the consideration of additional evidence if it is new and material, good cause exists for its late submission, and the claimant must "present to the remanding court at least a general showing of the nature of the new evidence." *Owens v. Astrue,* 2010 WL 3743647, at *4 (citing *Borders v. Heckler,*

777 F.2d 954, 955 (4th Cir. 1985)). A court's authority under sentence six is limited to remanding the case for "additional evidence to be taken," *Wooding v. Comm'r of Soc. Sec.,* 2010 WL 4261268, at *2 (W.D. Va. Oct. 29, 2010), and it may not "rul[e] as to the correctness of the administrative determination." *Riley v. Apfel,* 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citation omitted).

Jewell submitted documentation containing the findings of fact and analysis of evidence in determining his subsequent favorable decision. (Attachment to Plaintiff's Brief.) This evidence shows that Jewell saw a clinical psychologist on March 9, 2017, for complaints of social isolation, OCD behaviors and continued guilt pertaining to his father's suicide. In addition, the evidence reveals that treatment notes through December 2017 indicate that Jewell continued to exhibit symptoms of depression and anxiety related to his father's suicide. (Attachment to Plaintiff's Brief.)

On February 22, 2018, Howard S. Leizer, Ph.D., a state agency psychologist, found that Jewell had severe depressive, bipolar and related disorders; anxiety and obsessive-compulsive disorders; and trauma and stressor-related disorders. He found that Jewell had mild restrictions in understanding, remembering or applying information; marked difficulties in interacting with others and in maintaining concentration, persistence or pace; and moderate difficulties in adapting or managing oneself. In addition, Leizer completed a mental assessment, indicating that Jewell was moderately to markedly limited in his ability to perform sustained work activities based on his psychological and OCD symptoms. Furthermore, it was noted that Haynes's June 10, 2015,[17] opinion was considered in conjunction with the determination of disability. (Attachment to Plaintiff's Brief.) This new

---

[17] Haynes's opinion is dated June 10, 2016. (R. at 2651-56.) This opinion was considered by the ALJ in the current case. (R. at 151.)

evidence demonstrates that Jewell continued treatment for the same symptoms related to those considered in the case before this court. In addition, Leizer's diagnoses are consistent with Jewell's diagnoses prior to August 22, 2016. Nonetheless, Leizer placed more significant limitations on Jewell's work-related mental abilities. Therefore, I find that this evidence is new and material.

Based on this, I find that Jewell has met his burden of showing that evidence relied upon in reaching the subsequent favorable decision is new and material as it pertains to the period under consideration in this appeal. Therefore, I will remand this case pursuant to sentence six. An appropriate Order and Judgment will be entered.

DATED: March 18, 2020.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE